UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
RICHARD STARKEY and MICHELLE STARKEY,

        Plaintiffs,

- against -                                                              06 Civ. 1196 (CM)(GAY)

CAPSTONE ENTERPRISES OF PORTCHESTER,
INC., CAPSTONE ENTERPRISES, GLENMAN
INDUSTRIAL & COMMERCIAL CONTRACTOR
CORP., GLENMAN CONSTRUCTION
CORPORATION, JMOA ENGINEERING, P.C.
BABFAR EQUIPMENT CORPORATION and
JOHN DOE ONE through JOHN DOE NINE,
unknown entities involved in the installation
and/or supervision of a temporary heating unit
at the Irvington High School/Middle School Facility,

        Defendants.
------------------------------------------------------------------------x
CAPSTONE ENTERPRISES OF PORTCHESTER, INC.,

        Third-Party Plaintiff,

- against -

ZODIAC INDUSTRIES, INC.,

        Third-Party Defendant.
------------------------------------------------------------------------x

DECISION AND ORDER DENYING DEFENDANT BABFAR
EQUIPMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT

McMahon, J:

## Introduction

Beginning in September 2002, plaintiff Richard Starkey was employed by Zodiac Industries

("Zodiac") as a foreman and HVAC mechanic, positions which entailed supervising craftsmen and physically installing duct work. He received an hourly wage.

In 2003, the Irvington Public School District was in the midst of a renovation project which included construction of a theater arts building. The school district hired several different companies to work on the construction project in various capacities, including Capstone Enterprises of Portchester ("Capstone), Glenman Industrial & Commercial Contracting Corp. ("Glenman"), and JMOA Engineering, P.C. ("JMOA"). Defendant Babfar Equipment Corporation ("Babfar") leased temporary heating units to the school district for use in its new buildings. Zodiac was hired as a subcontractor.

On January 15, 2003, Starkey was present at the construction site, installing the heating units, when the ladder that he was standing on broke. As a result, Starkey suffered a serious injury to his right ankle that required immediate surgery and months of physical therapy. Starkey never again worked for Zodiac after this incident.

On January 12, 2006, Starkey and his wife, plaintiff Michelle Starkey, filed a verified complaint in the Supreme Court of the State of New York, County of Westchester, naming Capstone, Glenman, JMOA, Babfar, and other unknown entities as defendants, and alleging that Richard Starkey was injured as a result of defendants' negligence and failure to comply with state regulations. On February 15, 2006, Babfar filed a Notice of Removal, removing the case to this Court. Defendant Babfar now moves for summary judgment. For the reasons stated below, the motion is denied without prejudice.

Babfar's Role in the Irvington Construction Project

Irvington hired several contractors and other organizations to participate in its construction project; however, the relative roles performed by each company are somewhat in dispute.

Starkey contends that the school hired Capstone and Glenman as contractors, while JMOA was hired to do design work and supervise the construction workers, and Zodiac Industries ("Zodiac") was hired by Capstone as a subcontractor to install heating units at the school. Plaintiffs' Rule 56.1 Statement ("Plaintiffs' 56.1") ¶¶ 2-3; see also Verified Complaint ("Ver. Cplt") ¶ 53; Plaintiffs' Affidavit ("Plaintiff") ¶ 6. Further, Starkey states that defendant Babfar leased these temporary heating units to Irvington, and also contracted to install the units at the construction site. 56.1 ¶ 4, 8. However, it is the precise role played by Babfar which remains in dispute.

Babfar asserts, through its president Bruce Berry, that it had no involvement with any work performed at the Irvington construction site other than leasing the temporary heaters to the school district. Plaintiffs' Exhibit E (Affidavit of Bruce Berry) ("Berry") ¶ 2. Specifically, Babfar contends that it was not involved in the heaters' installation, and that its employees neither worked, nor supervised others, at the Irvington construction site, nor were they present at the site at any time. Id. ¶¶ 3-7. In his deposition, Starkey acknowledged that he took orders only from his supervisor at Zodiac, Peter Pascalini. Plaintiffs' Exhibit A (Deposition of Richard Starkey from initial lawsuit) ("Starkey") at 47-48.

Documents regarding the relationship between Irvington and Babfar are arguably unclear. According to a Babfar job quote dated October 29, 2002, installation of the duct work was the responsibility of the "contractor"; however, the agreement does not make clear whether the term "contractor" applies to Babfar or to another party. Plaintiffs' 56.1 ¶ 8; see also Defendant's Exhibit

E. The job quote lists both "Contractor Responsibilities" and "Services Included in Rental Price," and there is no overlap between the two sections. Defendant's Exhibit E at 4.

There is also some dispute over the ownership of the ladder from which Starkey contends that he fell. In his verified complaint, Starkey notes that the ownership of the ladder is uncertain, and that it could have been furnished either by Capstone, Glenman, Babfar, JMOA, the unnamed defendants, or a subcontractor. Ver. Cplt. ¶¶ 24, 36, 41, 47, 53. Babfar, however, maintains that it had no involvement with the ladder. Berry ¶ 9; see also Affidavit of Brian Kalman ("Kalman") at Exhibit F (Response to Notice to Admit). In his deposition, Starkey noted his belief that the ladder belonged to Zodiac, a conclusion which he drew based upon his frequent observations of the ladder on the back of Pascalini's truck. Starkey at 41.

Procedural History

Richard and Michelle Starkey initially brought suit against Glenman in the Supreme Court of the State of New York for the County of Westchester. After the discovery process revealed the presence of other parties, the initial suit was dismissed. Plaintiff ¶ 5. In its place, on January 12, 2006, the Starkeys brought suit against Capstone, Glenman, JMOA, Babfar, and nine unknown entities in the same court, alleging that Richard Starkey was injured as a result of defendants' negligence and failure to comply with state safety regulations, and that as a result Michelle Starkey suffered the loss of consortium of her husband. See Ver. Cplt. ¶ 55-57, 64-66, 69. On February 15, 2006, Babfar filed a Notice of Removal, removing the case to this Court. On April 13, 2006, Capstone impleaded Zodiac as a third-party defendant.

On March 30, 2006, Starkey served all defendants with a First Request for Production of

Documents. Plaintiff ¶ 7; see also Plaintiffs' Exhibit B. A conference was then conducted before this Court on April 7, 2006. The parties were ordered to exchange discovery pursuant to Federal Rule of Civil Procedure 26(a) by May 12, 2006, and all discovery was to be completed prior to August 31, 2006. Civil Case Management Plan ("Plan") ¶¶ 2, 5; see also Plaintiff ¶ 8. As of May 17, 2006, when Starkey filed his affidavit in opposition to Babfar's motion, only defendant Babfar had supplied any discovery. As a result, on May 15, 2006, Starkey requested an informal court conference in anticipation of making a discovery motion. Plaintiff ¶ 9; Plaintiffs' Exhibit D. On May 30, 2006, Magistrate Judge George A. Yanthis granted the defendants an additional one to two weeks to comply with Starkey's discovery requests.

Defendant now moves for summary judgment on all claims.

## Discussion

Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986). On a motion for summary judgment, the court views the record in the light most favorable to the non-moving party and resolves all ambiguities and draws all reasonable inferences against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir. 1987). Granting of summary judgment is appropriate "where the nonmovant's evidence is merely colorable,

conclusory, speculative, or not significantly probative." Travelers Ins. Co. v. Broadway West Street Associates, 164 F.R.D. 154, 160 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510). "However, where there has been no opportunity for discovery, a court may either refuse the application for judgment or order a continuance." Carruthers v. Flaum, 365 F.Supp.2d 448, 455 (S.D.N.Y. Mar. 31, 2005) (McMahon, J.)

Plaintiffs' Rule 56(f) Request for Further Discovery

In moving for summary judgment, Babfar argues that plaintiffs' claims must be dismissed because there is no evidence in support of their position that Babfar was responsible for supervising Richard Starkey on the work site or that the ladder from which he fell was under defendant's control. See generally Defendant's Memorandum of Law ("Memo"); see also Berry. In response, plaintiffs argue that it is premature for this Court to address defendant's motion because discovery has not yet concluded and, while defendant has complied with the discovery process, additional documents are still being sought by the plaintiffs from co-defendants Capstone, Glenman, and JMOA. Plaintiff ¶¶ 9, 16-17. Specifically, plaintiffs contend that the Babfar job quote sent to Irvington is unclear, in that it contains a reference to "Contractor Responsibilities," and that further discovery is needed to adequately interpret this document and get a more complete picture of Babfar's role in the Irvington construction project. Id. at 12. As a result, plaintiffs have requested that the motion be continued until appropriate discovery has been provided.

Federal Rule of Civil Procedure 56(f), states that:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or

discovery to be had or may make such other orders as is just.

In light of this rule, plaintiffs emphasize that, while defendant Babfar has complied with discovery, there remains a lack of clarity concerning the specific roles played by the various companies employed by Irvington. Further discovery, they argue, will likely help clarify precisely who was responsible for the January 15, 2003 incident.

"Rule 56 provides a mechanism whereby a party may avoid summary judgment if the party can make a showing that it is entitled to a continuance to permit further discovery." Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Slip Copy, 2006 WL 335357 at *7 (S.D.N.Y. Feb. 15, 2006). Such a showing requires that a party opposing summary judgment on the ground that further discovery is needed must file an affidavit "explaining: 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." Burlington Coat Factory Warehouse Corp. v. Espirit De Corp., 769 F.2d 919, 926 (2d Cir. 1985). In this case, plaintiffs have submitted a detailed affidavit touching upon all four of these issues.

"A party seeking relief under the rule must show that the material sought is germane...and that it is neither cumulative nor speculative." Comer v. McEntee, 2004 WL 2797053 (S.D.N.Y. Dec. 7, 2004) (citing Sundsvallsbanken v. Fondmental, Inc., 624 F.Supp. 811, 814-15 (S.D.N.Y. 1985)). Plaintiffs have successfully demonstrated that the information they are seeking is most assuredly germane; specifically, they are attempting to determine who was supervising Richard Starkey on the day that he was injured and who supplied the ladder from which he fell. Because this information is pertinent, and because it is preferable to permit parties to complete discovery

prematurely on a summary judgment motion, see Estate of Lennon v. Screen Creations, Ltd., 939 F.Supp. 287, 293 (S.D.N.Y. 1996), defendant Babfar's motion for summary judgment is denied without prejudice pending the completion of discovery by all of the parties to the instant action.

While Babfar notes that co-defendants have not objected to the motion for summary judgment, this is largely irrelevant. The court has discretion over whether or not to grant a continuance. U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc., 995 F.2d 375, 377 (2d Cir. 1993). In this case, the fact-intensive nature of plaintiffs' complaint mandates allowing for the completion of discovery before turning to defendant Babfar's motion for summary judgment.

## Conclusion

For the reasons stated above, defendant Babfar's motion for summary judgment is denied without prejudice to renewal following the completion of discovery. All discovery is to be completed by August 31, 2006. That deadline will not be extended for any reason.

This constitutes the decision and order of the Court.

Dated: June 9, 2006

_____
U.S.D.J.